UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

CRYSTAL GRIMSLEY, *Individually and* :
*as Administratrix of* THE ESTATE OF :
RICKIE L. GRIMSLEY, :
    Plaintiff :
     : CIVIL NO. 1:15-CV-01275
    v. :
     :
THE MANITOWOC COMPANY, INC., :
*et al.*, :
    Defendants :

*M E M O R A N D U M*

*I.    Introduction and Background*

Pending before the Court in this wrongful-death and survival action are defendants' motions to dismiss filed under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Docs. 8 & 10).

Generally, in the complaint, plaintiff claims that for more than 25 years, her husband, Rickie L. Grimsley ("Grimsley"), worked as a heavy-equipment mechanic at "the Manitowoc crane manufacturing facility" in Shady Grove, Pennsylvania. (Doc. 1 at ¶¶ 1, 9). While at work on August 29, 2013, Grimsley was working as a yard signaler when he was allegedly struck and killed by a crane, a Grove TMS9000E, defective in design and / or manufacture, that was operated by an unlicensed driver, defendant Kyle Mellott ("Mellott"). (See id. at ¶¶ 1, 50, 56, 80). According to plaintiff, Mellott had been moving the recently manufactured crane to an open lot at the manufacturing facility where Grimsley had also been working. (See id. at ¶ 51). Stemming from this alleged incident, plaintiff, individually and as administratrix of Grimsley's Estate, sues Mellott for negligence. In the same capacities, plaintiff additionally sues The Manitowoc Company, Inc.

("Manitowoc"); Manitowoc Crane Companies, LLC ("MCC"); Manitowoc Cranes, LLC ("MC"); and Grove U.S., LLC ("Grove") for negligence and strict liability.[1]

With respect to the identities of the corporate defendants, plaintiff claims that Manitowoc is a corporation involved in designing, manufacturing, and distributing lattice boom crawler cranes. (Id. at ¶¶ 15, 18). MCC, in turn, is a direct, wholly owned, subsidiary of Manitowoc, while MC is a direct, wholly owned, subsidiary of MCC. (Id. at ¶¶ 21, 30, 33). Plaintiff does not claim to know of MCC's or MC's specific operations.

In 2002, Manitowoc purchased the assets of Grove Investors, Inc., to include Grove U.S., LLC ("Grove"). (Id. at ¶ 16). Similar to Manitowoc, Grove was involved in designing, manufacturing, and distributing cranes; albeit, wheeled-mobile and rough-terrain hydraulic ones. (Id. at ¶¶ 17-18, 37). Upon being purchased, Grove became an indirect, wholly owned, subsidiary of both Manitowoc and MCC, and a direct, wholly owned, subsidiary of MC. (Id. at ¶¶ 20-21, 36). By, or through, MCC and / or MC, Manitowoc began exercising dominion and control over Grove, and did not treat Grove as an independent legal entity. Manitowoc, instead, treated Grove and its cranes as a brand. (See id. at ¶¶ 22, 39).

Plaintiff additionally alleges that Manitowoc's, MCC's, and MC's principle place of business is located at 1565 Buchannan Trail East, Shady Grove, Pennsylvania (the "Facility"), where the incident occurred and where Grimsley had been working. (Id. at ¶¶ 15, 29, 32). Indeed, since acquiring Grove, Manitowoc has publicly expressed that the Facility

---

[1] Manitowoc, MCC, MC, and Grove will be collectively referred to as the "corporate defendants." Similarly, we will collectively refer to Manitowoc, MCC, and MC as the "Manitowoc Defendants." Moreover, the parties appear to agree that Pennsylvania law governs. *See also, Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *McKenna v. Pacific Rail Service*, 32 F.3d 820, 825 (3d Cir. 1994); *Gares v. Willingboro Twp.*, 90 F.3d 720, 725 (3d Cir. 1996).

2

is its regional headquarters. (See id. at ¶¶ 23-26). Moreover, Manitowoc has allegedly been responsible for, and / or assumed responsibility for, the safety and security of the Facility; however, Grove remains the Facility's record owner. (Id. at ¶¶ 17, 19, 27).

Finally, plaintiff alleges that at least one of the Manitowoc Defendants was Mellott's employer. (See id. at ¶¶ 41-42, 71(a), 73(a)). Plaintiff, though, does not specifically allege who may have employed Grimsley. Nevertheless, plaintiff claims that Manitowoc was listed as Grimsley's employer on his 2012 W-2 Form. (Id. at ¶¶ 13-14). As of January 2013, however, Grove was identified as plaintiff's employer on his payroll checks and 2013 W-2 Form. (Id. at ¶¶ 10-12). As well, following the alleged incident, the Occupational Health and Safety Administration ("OSHA") conducted an investigation, in which Grove was identified as being Grimsley's employer and received a citation and penalty. (See id. at ¶¶ 66-67).

In moving for dismissal under Rule 12(b)(6) the defendants argue: (1) the complaint suggests that Grove was Grimsley's employer at the time of the incident and is immune from suit pursuant to the exclusivity provision of the Pennsylvania Workers' Compensation Act ("PWCA"), 77 P.S. § 481(a); (2) Mellott was Grimsley's co-employee at the time of the incident and is immune from suit under the PWCA, pursuant to 77 P.S. § 72; and (3) the Manitowoc Defendants are immune from suit pursuant to either (i) § 481(a), because Grove is also immune and plaintiff proceeds on a corporate-veil-piercing theory, or (ii) 77 P.S. § 461, as a statutory employer. (Docs. 8 & 10). The defendants' motions are ripe for review. Our rulings follow.

3

*II. Legal Standard*

A motion filed under Rule 12(b)(6) contests whether a claimant has stated a cognizable claim. In ruling on such a motion, we must accept the claimant's properly pleaded allegations as true, construe them in the light most favorable to the claimant, and determine if, "under any reasonable reading of the pleading, the [claimant] may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)). Our analysis consists of two parts: first, separating the "legal elements of a claim" from the factual allegations, and second, determining whether the factual allegations "show" a plausible entitlement to relief. *Id.* at 210–11.

While traditionally focused upon the allegations in a pleading, we may also consider exhibits attached thereto, matters of public record, and "an undisputedly authentic document" relied upon by the claimant and attached as an exhibit to a movant's motion to dismiss. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). If we are presented with and choose to consider other materials, outside of a pleading, a motion to dismiss must be converted into a motion for summary judgment. *See* Fed.R.Civ.P. 12(d).

In this matter, which is in the very early stages of litigation, we decline defendants' invitation to consider the same exhibit[2] attached to both motions to dismiss, (Docs. 8-2 & 10-2), that falls outside the purview of the 12(b)(6) legal standard. As such, the pending motions will be treated solely as motions to dismiss and the defendants' exhibit will be disregarded.

---

[2] The exhibit deals with the issue of Mellott's and Grimsley's employer.

4

III.   *Discussion*

A. *Grove (Doc. 8)*

Grove argues that it is immune from this lawsuit pursuant to the exclusivity provision of 77 P.S. § 481(a), which provides in part:

> The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes, . . . or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death . . . .

Under Pennsylvania law, Grove's argument in favor of immunity under § 481(a) is jurisdictional in nature and not an affirmative defense. *See Shamis v. Moon*, 81 A.3d 962, 964 & n. 5 (Pa. Super. Ct. 2013)(quoting *LeFlar v. Gulf Creek Indus. Park Number 2*, 515 A.2d 875, 879 (Pa. 1986)). In relying upon § 481(a)'s immunity provision, Grove therefore contends that the allegations in the complaint plausibly suggest that it was Grimsley's employer when the incident occurred. (See Doc. 9 at 5-6). Plaintiff disagrees. (Doc. 12 at 10-12).

To settle this issue, we must review the allegations in the complaint to determine whether they suggest the existence of an employer / employee relationship between Grove and Grimsley. In order to do so, the PWCA notes that the two terms encompass roles similar to those in a master-servant relationship at common law. *See* 77 P.S. § 21(a); *Thompson v. Fare*, 173 F.Supp.2d 368, 371 (E.D. Pa. 2001); *Kiehl v. Action Manufacturing Co.*, 535 A.2d 571, 73 (Pa. 1988) (quoting *Harris v. Seiavitch*, 9 A.2d 375 (Pa. 1939)). Accordingly, under the PWCA, an entity will be considered an employer where it maintains control or the right to control the work to be done and the manner of doing it. *Kiehl*, 535 A.2d at 573 (citing *Venezia v. Philadelphia Electric Co.*, 177 A. 25 (Pa. 1935)).

5

Where related corporate entities are involved, the question of control is determined by utilizing the "functional analysis" to analyze the functions performed by each entity and by the employee. *See id.* (quoting *Mohan v. Publicker Industries Inc.*, 222 A.2d 876, 879 (Pa. 1966)); *see also, Joyce v. Super Fresh Food Markets, Inc.*, 815 F.2d 943, 945 (3d Cir. 1987)(citing *Mohan*)(applying the functional analysis to a case involving sibling subsidiaries); *Colon v. Ashford Bucks County*, No. 11-1464, 2012 WL 5426766, at *4-*5 (E.D. Pa. Nov. 7, 2012); *Thompson*, 173 F.Supp.2d at 369-70, 373-75. After analysis, "'[i]f the corporate functions are distinct and in the performance of his duties, the employee is shown to have acted in furtherance of the functions of only one, or essentially one of the corporations, then that corporation will be deemed his employer.'" *Thompson*, 173 F.Supp.2d at 372 (quoting *Mohan*).

If the functional analysis is not dispositive of the control issue, we may rely upon indicia of control. *Mohan,* 222 A.2d at 879; *see Joyce,* 815 F.2d at 946-47. Indicia of control may include: (1) which party had the right to hire and fire; (2) which party possessed the obligation to pay wages; (3) which party supplied the employee with the tools of his job; and (4) to which party the employee normally reported. *Joyce,* 815 F.2d at 947.

Here, it is not affirmatively admitted or denied in the complaint that any of the corporate defendants were Grimsley's employer at the time of the alleged incident. The complaint also does not shed much light, if any, on Grimsley's functions as an employee at the Facility or the distinct functions of each corporate defendant. Indeed, other than providing us with Grimsley's basic job description, there are no allegations in the complaint allowing us to even infer whose specific function he may have been furthering, in his employment capacity. Similarly, the allegations in the complaint do not necessarily portray

6

the corporate defendants as having distinct functions; much less do the allegations suggest that the corporate defendants are distinct entities. Thus, the functional analysis will not be dispositive of the control issue.

Regarding indicia of control, we find that the allegations in the complaint suggest the existence of an employer / employee relationship between Grove and Grimsley on the date of the incident. To that end, plaintiff alleges that Grove was the employer listed on Grimsley's payroll checks as of January 2013; Grove was identified as Grimsley's employer on his 2013 W-2 Form; and OHSA, following its investigation, identified Grove as Grimsley's employer before issuing it a citation and penalty.[3] The complaint does not otherwise reference any indicia of control. To us then, the allegations in the complaint suggest that Grove was Grimsley's employer at the time of the incident, entitling Grove to immunity under 77 P.S. § 481(a). The claims against Grove will consequently be dismissed.

*B. The Manitowoc Defendants (Doc. 10)*[4]

The Manitowoc Defendants contend that they are immune from suit pursuant to either § 481(a) or 77 P.S. § 461 of the PWCA.

The crux of the Manitowoc Defendants' first argument is that since Grove is entitled to immunity under § 481(a), so too are they because, in the complaint, plaintiff essentially alleges that they were all operating as a single entity and, thus, collectively qualify as a single employer. (See Doc. 11 at 6-8; Doc. 15 at 5-7). Plaintiff disagrees,

---

[3]  Our ruling here is not swayed by the allegation that Manitowoc was identified as Grimsley's employer on his 2012 W-2 Form. The alleged incident occurred in the later half of 2013.

[4]  Because a ruling in favor of the Manitowoc Defendants may affect our ruling on the issue raised by Mellott, we proceed out of sequence.

7

appearing to solely argue that these defendants cannot engage in "reverse piercing" of the corporate veil in order to obtain immunity under the PWCA, in light of the Supreme Court of Pennsylvania's decision in *Kiehl*.  (See Doc. 13 at 10-11).

The doctrine of piercing the corporate veil permits courts to disregard a corporate entity in limited circumstances, primarily when used to defeat public convenience, justify wrong, protect fraud, or defend crime.  *Kiehl*, 535 A.2d at 574 (citation omitted).  At its core, the doctrine was judicially designed to protect innocent parties by treating a corporation and its shareholders, or a parent and its subsidiary, as identical for purposes of suit.  *Id.*  In *Kiehl*, an action involving § 481(a), the Supreme Court of Pennsylvania reversed an order from the Superior Court of Pennsylvania and, in so doing, refused to pierce the corporate veil "at the request of the creator of the veil," i.e. reverse pierce.  "To do so would permit a parent company to assert itself as an immune unit if sued by an employee of any of its subsidiaries for independent acts of negligence, and project itself as a separate entity if sued by a member of the general public for the same conduct."  *Id.* at 575.

Here, the concerns in *Kiehl* are not of issue since the Manitowoc Defendants are not requesting to have the corporate veil pierced.  Indeed, to the contrary, the Manitowoc Defendants assert that they are separate entities, which have abided by corporate formalities. (E.g., Doc. 15 at 3).  By asserting this, the Manitowoc Defendants are not placed at any advantage over any employees, unlike the *Kiehl* defendants would have been, if permitted to reverse pierce. As such, we predict that the Supreme Court of Pennsylvania would not find *Kiehl* to be conclusive.

We must now attempt to determine whether plaintiff is solely proceeding against these defendants under a veil-piercing theory and, if so, whether such a theory

qualifies the Manitowoc Defendants as an "employer," along with Grove, under § 481(a). Otherwise, if plaintiff is not proceeding under such a theory, the first argument raised by the Manitowoc Defendants is moot.

Should plaintiff be proceeding against these defendants under a veil-piercing theory, the most applicable one appears to be the alter-ego theory, which undercuts the general rule in Pennsylvania requiring parents and subsidiaries to be treated as separate entities. *See Mohan*, 222 A.2d at 879. Under the alter-ego theory, a claimant complains that a controlling corporation wholly ignored the separate status of a controlled corporation and so dominated and controlled its affairs that its separate existence was a mere sham. *Culbreth v. Amosa (PTY) LTD.*, 898 F.2d 13, 14-15 (3d Cir. 1990)(citing, *inter alia*, *Ashley v. Ashley*, 393 A.2d 637, 641 (Pa. 1978)); *see Botwinick v. Credit Exchange, Inc.*, 213 A.2d 349, (Pa. 1965)("There is a well-recognized exception to these general rules if the record demonstrates that the subsidiary is the 'alter ego' of the parent to the extent that domination and control by the parent corporation renders the subsidiary a mere instrumentality of the parent . . . .")(citations omitted). "In other words, . . . Pennsylvania . . . require[s] a threshold showing that the controlled corporation acted robot- or puppet-like in mechanical response to the controller's tugs on its strings or pressure on its buttons." *Culbreth,* 898 F.2d at 15.

In the complaint, plaintiff explicitly alleges that Manitowoc, by and / or through MCC and MC, "exerted such dominion and control" over Grove that it (Grove) was not treated as an independent legal entity; instead, Grove and its cranes were treated as a mere brand. (Doc. 1 at ¶¶ 22, 39). Moreover, despite allegedly remaining in Grove's name, plaintiff claims that all four corporations shared the Facility as a principle place of business and Manitowoc assumed responsibility over it. In her briefs, plaintiff also does not shy away

from stating that the corporate defendants have been "playing a shell game" and "abused the corporate form." (Doc. 13 at 3, 13). Similarly, plaintiff asserts in her briefs that she has pled "misuse of the corporate form" and that discovery will further reveal that Manitowoc: (1) "offered and held" Grimsley's pension plan; (2) paid life insurance to Grimsley's family; and (3) claimed a Workers' Compensation subrogation lien against any funds plaintiff may recover in this matter. (Doc. 13 at 3, 11, 12-13). Coupled with plaintiff's other allegations in the complaint, including those about Grimsley's payroll checks and W-2 Forms, we are compelled to conclude that plaintiff is solely proceeding in this case, against these defendants, under the alter-ego theory, theorizing that the corporate defendants are a single entity. Having made such a determination, we must finally decide whether proceeding under the alter-ego theory entitles the Manitowoc Defendants to immunity under § 481(a), along with Grove.

        To the extent that the Supreme Court of Pennsylvania has not decided this issue, under these circumstances[5], we predict that it would grant immunity to these defendants. We reach this conclusion mindful that § 481(a)'s immunity provision, like those in other states, serves as the *quid pro quo* between an employer and employee. Thus, if a parent and its subsidiaries are one in the same unit, as *plaintiff* appears to allege and theorize, it must reasonably follow that they collectively -- as a single unit -- pay out the benefit flowing to the employees under § 481(a), i.e., compensation for an on-the-job injury. Conversely then, the corporate defendants must collectively be entitled to claim immunity as the benefit flowing to employers under the same statute. Furthermore, as mentioned,

---

[5]     Our own research has not revealed any cases where the Supreme Court of Pennsylvania has resolved this issue and the parties have not provided us with any.

because it is plaintiff who has placed their form into play, the corporate defendants are not placed at any advantage over any employees by this ruling.

In short, the Manitowoc Defendants will be granted immunity under § 481(a) and the claims against them will be dismissed.[6]

### C. Mellott (Doc. 8)

Mellott argues that he was Grimsley's co-employee at the time of the incident, to which he is also entitled to immunity, albeit, under 77 P.S. § 72. Plaintiff disagrees, arguing that she explicitly alleges in the complaint that Mellott was employed by at least one of the Manitowoc Defendants, while no allegations exist identifying which corporate defendant, if any, employed Grimsley. Therefore, according to plaintiff, Mellott cannot be considered Grimsley's co-employee. (See Doc. 12 at 2, 3, 12-13).

Section 72 of the PWCA provides:

> If disability or death is compensable under this act, a person shall not be liable to anyone at common law or otherwise on account of such disability or death for any act or omission occurring while such person was in the same employ as the person disabled or killed, except for intentional wrong.

77 P.S. § 72. Stated more succinctly, this statue immunizes fellow employees from liability for negligence. *Mut. Cas. Co. v. Boiler Erection & Repair Co.*, 964 A.2d 381, 389 (Pa. Super. Ct. 2009).

---

[6] We do not reach the issue of whether the Manitowoc Defendants are alternatively immune under 77 P.S. § 461 as a statutory employer. Moreover, while a complaint is to control the result of a motion filed under Rule 12(b)(6), we would be remiss not to consider plaintiff's explicit assertions in her brief in opposition, in connection with the complaint's allegations. *See also,* Fed.R.Civ.P. 1. Also, based on what is currently pleaded in the complaint, coupled with what plaintiff expects discovery to reveal, it seems clear that, at minimum, one of the corporate defendants employed Grimsley. Thus, it would be futile for her to amend the complaint in an attempt to show that one of the Manitowoc Defendants, not Grove, was Grimsley's employer, or that discovery is needed to determine which of these entities employed Grimsley, since her theory against the corporate defendants is that they are alter-egos of one another. In other words, plaintiff would wind up in the same predicament, just at a different stage of the litigation, if this case were to move forward.

11

Although stated in the complaint that at least one of the Manitowoc Defendants was Mellott's employer, (Doc. 1 at ¶¶ 41-42, 71(a), 73(a)), we have previously determined that plaintiff is proceeding against the Manitowoc Defendants under the alter-ego theory, such that they should be treated as a single entity along with Grove.  Moreover, having also determined that the current allegations suggest an employer / employee relationship between Grove and Grimsley, it reasonably follows that Grimsley and Mellott were fellow employees.  As a result, Mellott qualifies for immunity under § 72 of the PWCA and the claims against him will be dismissed.

### IV. Conclusion

The corporate defendants, under § 482(a), and Mellott, under § 72, are immune from suit based on the allegations in the complaint.  Accordingly, we will grant both motions to dismiss.  (Docs. 8 & 10).  An appropriate Order will be issued.

/s/ William W. Caldwell  
William W. Caldwell  
United States District Judge
