UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

CRYSTAL GRIMSLEY, *Individually and*          :
*as Administratrix of* THE ESTATE OF          :
RICKIE L. GRIMSLEY,                           :
      Plaintiff                   :
                                  :  CIVIL NO. 1:15-CV-1275
      v.                          :
                                  :
THE MANITOWOC COMPANY, INC.,                  :
*et al.*,                                     :
      Defendants                  :

*M E M O R A N D U M*

I.    *Introduction*

Before this court is a motion by Defendant Grove U.S. L.L.C. ("Grove") to obtain a protective order or to quash a third-party subpoena directed to its purported workers' compensation insurance carrier, Sentry Insurance Company ("Sentry"). (Doc. 41). The subpoena seeks production of documents from Sentry's workers' compensation claim file, which pertains to a crane accident resulting in the death of Plaintiff Crystal Grimsley's late husband, decedent Rickie L. Grimsley. (Doc.44-1 at 4). Grove argues that it has standing to file this motion because it is insured by Sentry and has an interest in the subject matter of the subpoena, and that Sentry's workers' compensation file may contain documents protected by attorney-client privilege or the work product doctrine. (Doc. 42 at 7-11). Grove contends that documents from the workers' compensation claim file should first be screened by its lawyers so that Grove may withhold and identify in a privilege log any potentially privileged documents. Because Grove has not met its respective burdens to establish standing or to assert privilege over unspecified documents in Sentry's claim file, we will deny its motion.

*II.    Background*

On June 29, 2015, Plaintiff, individually and as executrix of decedent's estate, filed a complaint in this court against Defendants The Manitowoc Company, Inc. ("Manitowoc"), Manitowoc Crane Companies, LLC ("MCC"), Manitowoc Cranes, LLC ("Manitowoc Cranes"), Grove, and Kyle Mellott ("Mellott").[1]  (Doc. 1).  According to the complaint, the Corporate Defendants form a chain of ownership: Grove is owned by Manitowoc Cranes, which is owned by MCC, which is owned by Manitowoc; in other words, Grove, Manitowoc Cranes, and MCC are, directly or indirectly, wholly owned subsidiaries of Manitowoc.  (See id. ¶¶ 29-36).  The complaint brings negligence, wrongful death, and survival claims against all Defendants, as well as strict liability claims against the Corporate Defendants.  (Id. ¶¶ 68-90).

This lawsuit arises from a crane accident on August 29, 2013, which resulted in decedent's death ("Incident").  (See id. ¶ 1).  The complaint alleges that at around 2:40 p.m. that day, decedent was working as a heavy-equipment mechanic and acting as a yard signalman at a Manitowoc crane manufacturing facility in Shady Grove, Pennsylvania ("Facility") when a crane driven by Mellott, who was not licensed to operate cranes, was being moved to an open lot on the Facility and turned too sharply, striking and killing decedent as a result of being crushed between the moving crane and another parked crane.  (See id. ¶¶ 1, 9, 51-64).  Decedent was fifty-nine years old and had worked at the Facility for more than twenty-five years.  (Id. ¶ 9).  As alleged in the complaint, the record owner of the Facility's property was Grove, but the Facility bore Manitowoc's name and was "held out to the public" as one of Manitowoc's regional headquarters.  (Id. ¶¶ 9, 19,

---

[1] In this opinion, we refer to The Manitowoc Company, Inc. as "Manitowoc," and we collectively refer to all three Manitowoc entities as the "Manitowoc Defendants."  We also collectively refer to the Manitowoc Defendants and Grove as the "Corporate Defendants."

23-26).  The complaint does not contain allegations as to decedent's employer, but alleges that Mellott was employed by Manitowoc.  (Id. ¶ 41-43).

On September 8, 2015, Defendants moved to dismiss the complaint, arguing that they were immune from suit under various provisions of Pennsylvania's Workers' Compensation Act ("PWCA"), see 77 P.S. §§ 72, 481(a).  (Docs. 8 & 10).  On October 29, 2015, we granted each of Defendants' motions and dismissed the complaint in its entirety.  (Doc. 17).  First, we dismissed the complaint as to Grove, finding that it was entitled to immunity under PWCA § 481(a) because "the allegations in the complaint suggest that Grove was [decedent]'s employer at the time of the [I]ncident."  (Doc. 16 at 7).  Second, we perceived language in the complaint highlighting the Manitowoc Defendants' dominion and control over Grove as an allegation that the Manitowoc Defendants and Grove were a single entity; therefore, we interpreted the complaint as an attempt to pierce the corporate veil under an alter-ego theory against the Manitowoc Defendants and dismissed the complaint as to those Defendants, surmising that, under the circumstances, the Pennsylvania Supreme Court would grant immunity to each Manitowoc Defendant because they qualified as an "employer," along with Grove, under § 481(a).  (Id. at 7-10).  Finally, we dismissed the complaint as to Mellott, finding that he was immune from suit under PWCA § 72 because he and decedent were "fellow employees."  (Id. at 12).

On November 19, 2015, Plaintiff filed a motion for reconsideration, arguing that this court erred by finding Grove was decedent's employer; by reading into the complaint an alter-ego theory that was not pleaded; and by treating the Corporate Defendants as a single entity that was entitled to immunity under PWCA.  (Docs. 18 & 19).  On January 4, 2016, we denied Plaintiff's motion, finding that, even if we committed error

in concluding that Grove was decedent's employer, our conclusions as to Defendants'
immunity "required the same result given that neither the allegations in the complaint nor
Plaintiff's arguments reasonably suggested that an entity other than the named Corporate
Defendants employed [decedent] at the [F]acility." (Doc 22 at 3). We found dismissal of
the complaint without leave to amend proper "because no matter how the case was
pleaded . . . [Defendants] would be cloaked with immunity." (Id.) On January 27, 2016,
Plaintiffs appealed our decisions to the Third Circuit. (Doc. 23).

On January 10, 2017, the Third Circuit reversed our decision granting
Defendants' motions to dismiss, reinstated the complaint as to all Defendants, and
remanded for further proceedings. Grimsley v. Manitowoc Co., Inc., 675 F. App'x 118,
119 (3d Cir. 2017). First, the panel reversed our determination that Grove was decedent's
employer, finding that "[e]ven if select facts 'suggest that Grove was [decedent's] employer
at the time of the [I]ncident,' those facts do not establish that Grove is subject to dismissal
as a matter of law." Id. at 121. Next, because we "erred in according immunity to Grove,"
the panel also held that it was error for us to extend that immunity to the Manitowoc
Defendants, and to find Mellott to be decedent's co-employee. See id. & n.4. Finally, "to
clarify the nature of the claims that remain," the panel added that "[a] fair reading of the
[c]omplaint discloses that [P]laintiff sued the Manitowoc [Defendants] on a direct
participation theory," and that we therefore "incorrectly characterized plaintiff's claims" as
attempting to pierce the corporate veil. Id. at 121-22. To the extent the complaint alleged
that the Manitowoc Defendants exercised dominion and control over Grove, the panel
stated that Plaintiff is master of her complaint, has "repeatedly insisted" that she will not

pursue alter-ego liability, and "should simply be estopped from making a veil-piercing argument in any further proceeding." Id. at 122.

Defendants filed their answers to the complaint on March 2, 2017. (Docs. 35 & 36). In their answer, the Manitowoc Defendants denied being Mellott's or decedent's employer on the day of the Incident. (Doc. 36 ¶ 25). In a separate answer, Grove admitted that it was Mellott's and decedent's employer[2] and that Mellott was driving a crane without a crane operator's license, but denied that Mellott was required to carry such a license while driving—as opposed to "operating"—a crane. (Doc. 35 ¶¶ 25, 35, 41, 53). Grove also denied that Manitowoc controlled any manner or method of work done at the Facility, and averred that decedent "put himself in the blind spot of the crane being driven by [Mellott] . . . and despite being told by another employee to move, unfortunately failed to do same, and was struck by the crane." (Id. at ¶¶ 39, 56).

This case proceeded to discovery and, on April 20, 2017, Plaintiff noticed Defendants of her intent to serve third-party subpoenas on various entities pursuant to Federal Rule of Civil Procedure 45. (Doc. 42-2 at 2). One of the subpoenas was directed to Sentry and requested that Sentry produce "any and all documents, including correspondence with the insured relating to" Sentry's workers' compensation claim file and its third-party liability insurance claim file. (Id. at 4). The subpoena did not identify who the "insured" was for each claim file, but identified the claim number and date of the Incident attached to each claim. (Id.)

On April 24, 2017, upon receiving the third-party subpoena, Defendants' counsel, who represents all Defendants in this action, expressed his intent to file a motion for a protective order on Grove's behalf. (Doc. 42-3). Alternatively, Defendants' counsel

---

[2] Grove admitted to being decedent's employer despite no such allegation in the complaint.

proposed that Plaintiff allow Sentry to produce each claim file to him to be screened for documents potentially protected by attorney-client privilege or the work product doctrine, and then have Defendants' counsel produce any discoverable documents to Plaintiff along with a privilege log.  (See Doc. 42 at 3).  On May 1, 2017, Plaintiff's counsel agreed to Defendants' proposal as to Sentry's third-party liability insurance claim file, believing Grove to be insured by Sentry with respect to that claim, but did not agree with respect to Sentry's worker's compensation claim file, arguing that Sentry's workers' compensation coverage "is wholly separate from" any third-party liability coverage that Sentry provides for Grove.  (Doc. 42-4).  Plaintiff sent Defendants a modified third-party subpoena requesting that Sentry produce all documents, including correspondence with Sentry's insured, relating only to Sentry's workers' compensation claim file.  (Doc. 42-5).

On May 2, 2017, a case management conference was held with the parties, during which this court was notified of the discovery dispute.  On May 9, 2017, Grove filed the instant motion under Federal Rules of Civil Procedure 26(c) and 45(d)(3) for a protective order or to quash the modified third-party subpoena to Sentry regarding documents in Sentry's workers' compensation claim file.  (Doc. 41).  In its motion, Grove argues that it is insured by Sentry for workers' compensation and that Sentry's claim file may contain documents protected by attorney-client privilege or the work product doctrine. (Doc. 42 at 7-11).  Plaintiff argues that Grove does not have standing to challenge the third-party subpoena because Manitowoc is Sentry's "insured" for workers' compensation coverage.  (Doc. 44 at 18-20).  Plaintiff contends that Grove conflates third-party liability insurance coverage it has been provided by Sentry "with the wholly separate workers' compensation insurance coverage provided by Sentry . . . to [Manitowoc]."  (Id. at 21).

6

*III.    Discussion*

Federal Rule of Civil Procedure 45 "establishes the rules for discovery directed to individuals and entities that are not parties to the underlying lawsuit." First Sealord Sur. v. Durkin & Devries Ins. Agency, 918 F. Supp. 2d 362, 382 (E.D. Pa. 2013). "A subpoena under Rule 45 'must fall within the scope of proper discovery under [Federal Rule of Civil Procedure] 26(b)(1).'" Id. (quoting OMS Invs., Inc. v. Lebanon Seaboard Corp., No. 08–2681, 2008 WL 4952445, at *2 (D.N.J. Nov. 18, 2008)).  Under Rule 45, it is within the sound discretion of district courts to "ensure compliance with subpoenas, while avoiding unfair prejudice to persons who are the subject of a subpoena's commands." Audi of Am., Inc. v. Bronsberg & Hughes Pontiac, Inc., No. 3:16-CV-2470, 2017 WL 2212505, at *1 (M.D. Pa. May 17, 2017).

Here, Plaintiff seeks to issue a third-party subpoena to Sentry requesting production of its workers' compensation claim file related to the Incident.  (Doc. 44-1 at 4). The parties do not appear to contest that information in the claim file falls within the proper scope of discovery pursuant to Rule 26(b)(1).  (Docs. 41 ¶¶ 11-12 & 44 at 8).  However, Grove moves to obtain a protective order or quash the third-party subpoena, claiming that it is insured by Sentry for workers' compensation and holds a personal right or privilege over unspecified documents in the claim file.  (Doc. 42 at 7-11).  The instant motion thus boils down to (1) who is "insured" by Sentry for workers' compensation pursuant to Plaintiff's third-party subpoena; and (2) whether an insured party to litigation has standing to obtain a protective order or quash a third-party subpoena directed to its purported workers' compensation insurance carrier by asserting claims of attorney-client privilege or

work product over unspecified documents in its insurer's claim file.  Because Grove fails to supply sufficient information to answer these questions, we will deny its motion.

Federal Rule of Civil Procedure 45(d)(3)(A) requires a court, upon motion, to quash or modify a subpoena that, among other things, "requires disclosure of privileged or other protected matter, if no exception or waiver applies."  Fed. R. Civ. P. 45(d)(3)(A).  The party moving to quash such a subpoena "bears a 'heavy burden' of demonstrating that an enumerated basis for quashing the subpoena exists."  Malibu Media, LLC v. Doe, No. 4:15-CV-2281, 2016 WL 524248, at *2 (M.D. Pa. Feb. 10, 2016).

In the alternative to a motion to quash a third-party subpoena under Rule 45, a party may also seek a protective order over certain discovery requests pursuant to Federal Rule of Civil Procedure 26(c).  See Mun. Revenue Servs., Inc. v. Xspand, Inc., No. 07–42, 2007 WL 1875793, at * 1 (E.D. Pa. June 27, 2007) ("[A]nalysis of Rule 45([d])(3)(A) motions is similar to analysis of Federal Rule of Civil Procedure 26(c) motions for a protective order.").  In pertinent part, Rule 26(c)(1) provides:

> A party or any person from whom discovery is sought may move for a protective order . . . .  The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action.  The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (A) forbidding the disclosure or discovery;
>
> . . .
>
> (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters; . . . .

Fed. R. Civ. P. 26(c)(1).  Like Rule 45(d)(3)(A), "Rule 26(c) places the burden of persuasion on the party seeking the protective order."  Cipollone v. Liggett Grp., Inc., 785

F.2d 1108, 1121 (3d Cir. 1986), <u>cert. denied</u>, 484 U.S. 976 (1987).  Under Rule 26(c), it is

"well-established that a party wishing to obtain an order of protection over discovery

material must demonstrate that 'good cause' exists for the order of protection." <u>Pansy v.</u>

<u>Borough of Stroudsburg</u>, 23 F.3d 772, 786 (3d. Cir. 1994).  "Good cause is established on

a showing that disclosure will work a clearly defined and serious injury to the party seeking

closure.  The injury must be shown with specificity." <u>Id.</u> (quoting <u>Publicker Indus., Inc. v.</u>

<u>Cohen</u>, 733 F.2d 1059, 1071 (3d Cir. 1984)).  "'Broad allegations of harm, unsubstantiated

by specific examples or articulated reasoning,' do not support a good cause showing." <u>Id.</u>

(quoting <u>Cipollone</u>, 785 F.2d at 1121).

A.  *Grove lacks standing to challenge Plaintiff's third-party subpoena*

Whether a party has standing to challenge a third-party subpoena under

Rules 45(d)(3)(A) and 26(c) depends on the challenge being advanced.  "'Generally

speaking, a party does not have standing to quash a subpoena served on a third party.'"

<u>Thomas v. Marina Assocs.</u>, 202 F.R.D. 433, 434 (E.D. Pa. 2001); <u>see also</u> <u>Davis v. Gen.</u>

<u>Accident Ins. Co. of Am.</u>, No. 98–4736, 1999 WL 228944, at *2 (E.D. Pa. Apr. 15, 1999)

("Ordinarily, only the non-parties whom were served with the subpoenas may move to

have them quashed under Federal Rule of Civil Procedure 45([d])(3)(A).").  An exception

to this rule exists, however, where "the party seeks to quash based on claims of privilege

relating to the documents being sought." <u>Thomas</u>, 202 F.R.D. at 434; <u>First Sealord</u>, 918

F. Supp. 2d at 382 ("An exception to this rule permits a party to move to quash when it

'claims some personal right or privilege in respect to the subject matter of a

subpoena . . . directed to a nonparty.'" (quoting <u>Davis</u>, 1999 WL 228944, at *2)).

Here, as a party to this action, Grove ordinarily does not have standing to quash or seek a protective order over the third-party subpoena directed to its insurer, Sentry, unless Grove shows that it has some personal interest in, or privilege with respect to, the subpoena's subject matter—Sentry's workers' compensation claim file. Grove attempts to demonstrate its interest in Sentry's claim file by maintaining that it is Mellott's and decedent's employer and that it is insured by Sentry for third-party liability and workers' compensation insurance. (Doc. 41 at 2-3). Plaintiff contends that Sentry insures Manitowoc, not Grove, for workers' compensation, and supplies documentation showing same; therefore, Plaintiff argues that Grove lacks standing to quash the subpoena or obtain a protective order. (Doc. 44 at 20-21). As a result, there appears to be a dispute as to what type of insurance Sentry provides, and for which Defendants. Both Plaintiff and Grove supply this court with conflicting exhibits to support their contentions as to who is insured by Sentry.

Plaintiff urges that Manitowoc, as decedent's purported employer and Sentry's insured, began paying workers' compensation benefits immediately after decedent's death. To support her contention, Plaintiff provides decedent's W2 forms for 2005, 2006, 2007, 2008, 2009, 2010, 2011, and 2012. (Docs. 44-4 to 44-9). Each of those W2 forms lists decedent's employer as "The Manitowoc Company, Inc. Agent for Grove US, LLC." (See id.) In other words, the W2 forms for those eight years list Manitowoc—as Grove's agent—as decedent's employer.[3] Notably, each W2 appears to list the Federal Employer Identification Number ("EIN" or "FEIN") for Manitowoc, not

---

[3] Although the instant motion concerns which Defendants are insured by Sentry for workers' compensation so as to claim standing, we note that facts about decedent's employment—namely, the "employer" or "insured" on whose behalf Sentry pays benefits—is relevant to our inquiry.

Grove.  Because W2 forms are typically issued by employers in January for reporting an employee's preceding year's wages and withheld taxes, decedent's 2012 W2 form was presumably issued in January 2013, and therefore was presumably his last-issued W2 before his death from the August 2013 Incident; that 2012 W2 lists Manitowoc's EIN.

Plaintiff also provides exhibits immediately following the Incident, which identify Manitowoc as decedent's purported employer and as Sentry's insured for workers' compensation.  On August 30, 2013, the day after decedent's death, a First Report of Injury Form, apparently filled out by—or on behalf of—decedent's "employer,"[4] was submitted to Pennsylvania's Department of Labor & Industry's Bureau of Workers' Compensation ("Workers' Compensation Bureau").  (Doc. 44-11 at 2-4).  Under "Employer Information," the form listed "Grove Cranes Worldwide" as decedent's employer; however, both parties agree that no such company exists.[5]  (Doc. 44-11 at 3); (Docs. 41 at 3 & 43 ¶ 4).  Plaintiff asserts that "Grove Cranes Worldwide" is actually Manitowoc because, in that same "Employer" section, the form contains Manitowoc's EIN.  (Doc. 44-11 at 3).  Under "Insurer Information," the form also lists Manitowoc's name, along with its EIN, as Sentry's "Insured" for workers' compensation, and provides Sentry's workers' compensation claim number for the Incident.  (Id.)  On September 10, 2013, a Notice of Temporary Compensation Payable (NTCP) was filed with the Workers' Compensation Bureau, which listed "Grove Cranes Worldwide" as decedent's employer, but did not

_____

[4] See 77 Pa Stat. § 994 ("An employer shall report such injuries to the Department of Labor and Industry . . . ."); 34 Pa. Code § 121.5(a) ("The employer shall file a first report of injury . . . .").

[5] Confusingly, a Sentry claims representative also sent letters to decedent and Plaintiff just after the Incident in which the claims representative again identifies Sentry's "Insured" as "Grove Cranes Worldwide," which, as noted, is an entity that does not exist.  (See Docs. 44-12 & 44-13).

contain a corresponding EIN.[6]  (Doc. 44-14).  On October 1, 2013, a Subsequent Report

of Injury form was filed, listing Manitowoc's EIN next to "Employer FEIN" and containing

Sentry's EIN as corresponding to "Insurer's FEIN."  (See Doc. 44-15 at 4).

On October 18, 2013, a corporate payroll analyst for Manitowoc sent Plaintiff

a letter enclosing a check for decedent's final wages, and stating that Plaintiff would

receive an IRS Form 1099 in January 2014 to be used for her 2013 tax returns.  (Doc. 44-

16).  The subsequent 1099-MISC form issued for decedent's final wages lists Manitowoc,

along with its EIN, as the payer.  (Doc. 44-17).  Around that same time, Grove is listed as

Mellott's employer pursuant to a notice of determination issued by Pennsylvania's Office of

Unemployment Compensation Benefits; it is not clear how this employment determination

was made.  (Doc. 44-19 at 2).  In October 2013, Plaintiff retained counsel and notified

Grove of her intent to file this lawsuit.  (Doc. 44-18).

Once Plaintiff notified Grove of her intent, documentation begins pointing

away from Manitowoc and toward Grove as being decedent's employer and being

Sentry's insured for workers' compensation.  On decedent's 2013 W2 form, presumably

issued in January 2014 (after the Incident), his employer is, apparently for the first time,

identified as "Grove US, LLC. c/o The Manitowoc Company, Inc."[7]  (Doc. 44-20).  The

2013 W2 also now lists, for the first time, the EIN for Grove, not Manitowoc.  (Id.)  In other

---

[6] An employer may issue an NTCP where it is uncertain as to whether a workers'
compensation claim is compensable or as to the extent of its liability.  See 77 Pa. Stat. §
717.1(d)(1).  If, after investigation, an employer fails to file a Notice of Stopping of Compensation
within ninety days, the NTCP is converted to a Notice of Compensation Payable, and the employer
is deemed to have admitted liability under the PWCA.  Id. § 717.1(d)(6).

[7] We note that Grove stresses that their entity name is "Grove U.S. L.L.C." and takes issue
with being named as "Grove U.S., L.L.C." in Plaintiff's complaint.  (Doc. 41 at 2).  Grove does not
raise any concern with the comma in its entity name in decedent's W2 forms.

12

words, decedent's eight years of W2 forms preceding the Incident list Manitowoc's EIN in the employer EIN field, but, after the Incident, Grove's EIN is provided.  (Id.)

In March 2014, upon investigation of the Incident by the United States Department of Labor's Occupational Safety & Health Administration (OSHA), Grove was identified as decedent's employer and was fined $5,250; it is unclear how OSHA arrived at its employment determination.  (See Doc. 1-6 at 2).  In July 2014, an attorney for Sentry wrote to Plaintiff's counsel about Plaintiff's proposition for a settlement regarding Sentry's third-party liability insurance, which Sentry appears to provide for Grove.  (Doc. 44-21).  In that letter, Sentry identifies Grove as its insured, but only references its third-party liability insurance claim number, not its workers' compensation claim number.  (Id.)  Finally, on October 16, 2015, after the instant action was filed, an "Amended/Corrected" NTCP form was filed with the Workers' Compensation Bureau, which now identifies Grove as decedent's employer, includes Grove's EIN, and lists Sentry as Grove's workers' compensation insurer.  (Doc. 44-22).

For the instant motion, we begin by emphasizing that our primary focus is on Grove's disputed insurance relationship with Sentry, and whether Grove has shown an interest in, or privilege over, documents in Sentry's workers' compensation claim file so as to have standing to challenge Plaintiff's third-party subpoena.  The parties' disagreement as to decedent's employment with Grove or Manitowoc only provides context to the instant dispute as to whom Sentry insures for workers' compensation.

In opposition to Grove's motion, Plaintiff points to documents—in particular, forms filed with Pennsylvania's Workers' Compensation Bureau immediately after the Incident—which suggest that, for workers' compensation, Sentry insures, and began

making payments on behalf of, Manitowoc.  (See Doc. 44 at 14).  Grove rebuts Plaintiff's assertions as being "based on the misconception that the insured under the workers' compensation policy at issue is [Manitowoc]," and maintains that Plaintiff's argument "is not supported by the *relevant* documentation produced in this case."  (Doc. 45 at 2).

Despite its burden to demonstrate standing, however, Grove does not supply this court with the workers' compensation policy that it states is "at issue."  (See id.). Indeed, Grove seems to insinuate that Sentry may provide insurance for both itself and Manitowoc, admitting that Sentry "is the insurer for Defendants in this case," but "under a different insurance policy."  (Doc. 41 at 4 n.2).  Grove does not clarify Plaintiff's purported "misconception" by supplying this court with definitive proof of its insurance relationship with Sentry, such as an insurance contract or declaration page with Sentry for workers' compensation as of the date of the Incident.  Rather, Grove points solely to the "Amended/Corrected" NTCP form, filed with the Workers' Compensation Bureau after suit was filed in this case, as proof that "it is without a doubt that [Sentry's] insured is [Grove]." (Doc. 45 at 3).  Grove maintains that documents referencing Manitowoc as Sentry's insured are "mistake[s]" that were corrected, and intimates that we should disregard the First and Subsequent Report of Injury forms—which identify Manitowoc as Sentry's insured and decedent's employer—because those forms were completed by a "Sentry claims adjuster."  (See Doc. 45 at 3, 8).  However, it appears that such report of injury forms must be submitted by, or on behalf of, "[t]he employer."  See 34 Pa. Code § 121.5(a).  Thus, even if Sentry submitted those reports of injury, it was doing so on behalf of its insured, which Sentry identified at the time as Manitowoc via Manitowoc's EIN.

Those reports of injury notwithstanding, Grove maintains that they were "corrected in a legally binding document" when Sentry filed an amended NTCP after commencement of this lawsuit. (Doc. 45 at 8). Grove, however, provides no authority for why the original NTCP is negated or why the prior report of injury forms listing Manitowoc as Sentry's insured must be disregarded. Grove also fails to explain why documentation appears to show that Manitowoc admitted liability for the Incident by having Sentry pay workers' compensation benefits on its behalf for almost two years before the amended NTCP was filed. See supra nota 6 (citing 77 Pa. Stat. § 717.1(d)(6)). Neither Grove nor Manitowoc (since both are represented by the same counsel) definitively clarify the confusion surrounding whom Sentry insures, and for what, at the time of the Incident, even though they could have both supplied this court with proof of any policies with Sentry.[8] Grove bears the burden of showing a particular interest or privilege in Sentry's workers' compensation claim file for the instant motion, and has failed to supply this court with definitive proof of what insurance relationship existed, when, and between whom. Rather, Grove mostly attempts to clarify decedent's employment relationship,[9] despite conceding that the only issue for the present motion is "what entity is the insured on the [w]orkers' [c]ompensation claim for Sentry." (Doc. 45 at 4).

Here, given Grove's failure to clarify the conflicting documentation as to Manitowoc's or Grove's potential workers' compensation insurance relationship with

---

[8] We note that even if we were supplied with Manitowoc's and Grove's insurance policies, such documents, to the extent they showed both entities were insured for workers' compensation by Sentry, would not necessarily resolve which policy covered the Incident.

[9] For example, Grove addresses decedent's W2 forms from 2005 through 2012 by explaining that "[t]he fact that [Manitowoc] acted as [Grove's] agent on certain matters does not convert [Manitowoc] into decedent's employer." (Doc. 45 at 7). We note that even if such clarification were pertinent to this motion, it does not explain why eight years of W2 forms list Manitowoc's EIN, but then, after the Incident, Grove's EIN appears for the first time in decedent's 2013 W2 form.

Sentry, we conclude that Grove has failed to meet its burden of supplying sufficient evidence to establish standing to seek a protective order over or quash the third-party subpoena directed to Sentry. The exhibits submitted by the parties show confusion regarding whom Sentry insured at the time of the Incident for workers' compensation, and Grove fails to adequately clarify such confusion so as to demonstrate its personal interest in, or claim of privilege over, Sentry's workers' compensation claim file for the Incident.

Additionally, we note the speculative nature of Grove's motion in that Grove asserts that Sentry's claim file "may contain" documents or information protected by attorney-client privilege or the work product doctrine. (Doc. 41 ¶¶ 20, 27). Grove's broad and imprecise assertions as to non-specific, potentially privileged documents in Sentry's claim file fall short of showing "good cause" to obtain a protective order under Rule 26(c), Pansy, 23 F.3d at 786, and certainly do not meet Grove's "heavy burden" under Rule 45(d)(3)(A) for establishing a claim of privilege in order to quash a subpoena, see Malibu Media, LLC, 2016 WL 524248, at *2. As such, we will deny Grove's motion to quash or obtain a protective order over Plaintiff's third-party subpoena to Sentry because Grove has not met its burden of demonstrating standing with respect to its motion.

### B. Grove fails to meet its burden of establishing attorney-client privilege or work product with respect to Sentry's claim file

However, even assuming an insured-insurer relationship exists between Grove and Sentry, we reject Grove's arguments that such a relationship, without more, establishes its claims of attorney-client privilege or work product doctrine over unspecified documents that Sentry's claim file "may contain." (Doc. 41 ¶¶ 20, 27). We are unconvinced that Grove, as an insured party to the instant litigation, may assert attorney-client privilege or work product over its insurer's workers' compensation claim file based

solely on its insurance relationship, where its insurer is not a party to this litigation, does not appear to contest coverage of the workers' compensation claim, and where there are insufficient facts to show that Grove and Sentry share common legal interests or that Sentry's claim file contains documents prepared in anticipation of litigation.

First, we reject Grove's sweeping claim that, as Sentry's insured, it shares a common legal interest with Sentry and that, as such, any communications in Sentry's claim file, "if they are between Grove, its insurer and its attorneys, and they are to obtain legal advice, . . . are protected by the attorney-client privilege and not discoverable." (Doc. 42 at 8). Federal courts sitting in diversity look to state law for applicable legal principles on issues of privilege. <u>See</u> Fed. R. Evid. 501; <u>United Coal Co. v. Powell Constr. Co.</u>, 839 F.2d 958, 965 (3d Cir.1988). Pennsylvania law recognizes the attorney-client privilege. 42 Pa. Cons. Stat. § 5928. The privilege operates "in a two-way fashion to protect confidential client-to-attorney or attorney-to-client communications made for the purpose of obtaining or providing professional legal advice." <u>Gillard v. AIG Ins. Co.</u>, 15 A.3d 44, 59 (Pa. 2011). The burden of proving application of the attorney-client privilege is on the party asserting the privilege, who must establish:

> (1) The asserted holder of the privilege is or sought to become a client.
>
> (2) The person to whom the communication was made is a member of the bar of a court, or his subordinate.
>
> (3) The communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or tort.
>
> (4) The privilege has been claimed and is not waived by the client.

<u>Pa. Dep't of Educ. v. Bagwell</u>, 114 A.3d 1113, 1123-24 (Pa. Commw. Ct. 2015).

Although "[i]t is well-established that once attorney-client communications are disclosed to a third party, the attorney-client privilege is waived[,]" see id. at 1124 (citing Commonwealth v. Chmiel, 738 A.2d 406 (1999)), Pennsylvania courts have recognized the attorney-client privilege as extending, in certain cases, to co-clients or clients sharing common legal interests via the "common interest" (also known as "community of interest" or "joint defense") and "co-client" doctrines, see Mine Safety Appliances Co. v. N. River Ins. Co., 73 F. Supp. 3d 544, 573 (W.D. Pa. 2014) ("The principles and boundaries of these doctrines remain unsettled under Pennsylvania law.").

"The 'common interest' exception can arise where separate clients retain different attorneys who then share information with each other pursuant to a common legal interest." Id. (citing CAMICO Mut. Ins. Co. v. Heffler, Radetich & Saitta, LLP, No. CIV. A. 11-4753, 2013 WL 315716, at *2 (E.D. Pa. Jan. 28, 2013)). Typically, the doctrine applies when "co-defendants are required to retain separate counsel to avoid potential conflicts over contingent or subsidiary issues that might arise in the case." Id.; In re Condemnation by City of Phila. in 16.2626 Acre Area, 981 A.2d 391, 397-98 (Pa. Commw. Ct. 2009). Pursuant to the doctrine, information "generated from the shared attorney-client communications" can be "shared pursuant to this common interest," and, as such, the attorney-client privilege does not exist "as between those clients," but the communications "remain privileged as to all others." Mine Safety, 73 F. Supp. 3d at 573 (citing In re Teleglobe Commc'ns Corp., 493 F.3d 345 (3d Cir. 2007)). For the common interest doctrine to apply, "separate counsel for different clients is required," and the clients "must be parties to litigation or involved in similar or related legal proceedings that implicate essentially the same interest against a common adversary." Id.

By contrast, "[t]he 'co-client' exception to the attorney-client privilege comes into play when two or more clients utilize the same attorney." Mine Safety, 73 F. Supp. 3d at 574 (citing CAMICO, 2013 WL 315716, at *2). "When this exception applies, the default rule is that all communications in the course of the joint representation are discoverable by each client in the event of litigation between them but otherwise remain privileged as against third parties." Id. Co-client undertakings are distinguishable "from situations where a lawyer represents a single client, but another person with allied interests cooperates with the client and the client's lawyer." Id. (quoting CAMICO, 2013 WL 315716, at *4). "[A] co-client relationship does not exist simply by virtue of the insurer-insured relationship." Id. (quoting CAMICO, 2013 WL 315716, at *3). In fact, even where an insurer hires an attorney for its insured, it is not clear that the co-client doctrine applies. See id. ("Some federal courts have interpreted Pennsylvania law to encompass an absolute rule whereby the insured and insurer are always considered to be co-clients when the carrier pays for the defense. . . . Others have rejected this notion.").

Here, we reject Grove's broad assertion that, by virtue of its purported insured-insurer relationship with Sentry, Grove's attorneys "jointly represent[] or act[] for the common interest of" both Sentry and Grove, and that Grove and its insurer jointly hold attorney-client privilege "as to any third-part[ies]." (Doc. 45 at 5). We initially note that it is unclear whether Grove relies on the "common interest" or "co-client" doctrine to assert attorney-client privilege, as citations in its briefing appear to conflate the doctrines. (See id.). In any event, Grove provides little information, beyond asserting that it is insured by Sentry, as to how either doctrine applies in this case. For instance, it is not apparent whether Sentry and Grove are represented by separate counsel, a requirement for

application of the common interest doctrine, or by the same counsel, which is indicative of the co-client doctrine.

Moreover, as to the common interest doctrine, we note that Sentry is not a party to the instant action and has not denied workers' compensation coverage with respect to the Incident. Consequently, Grove has not shown with any particularity how Sentry is involved in similar or related legal proceedings so as to share common legal interests with Grove in mounting a defense in this case. See Mine Safety, 73 F. Supp. 3d at 573 ("[A] shared common business interest or an interest that is solely commercial is insufficient to warrant application of the privilege."); In re Condemnation, 981 A.2d at 399 ("Evidence that . . . parties supported each other's separate efforts by sharing information and/or legal strategy is *not* evidence that the two shared a common legal interest."). Grove has also not shown how it is Sentry's co-client, as there is no indication that Sentry is paying for Grove's counsel, and Sentry's only apparent interest in this litigation is to generally minimize its insured's exposure to liability. See Mine Safety, 73 F. Supp. 3d at 574 ("[A] shared interest between a carrier and an insured in minimizing the insured's exposure to liability does not in itself create a co-client relationship.").[10]

Aside from Grove's lack of proof, we also hesitate to extend the "common interest" or "co-client" doctrines to the instant dispute where Grove's attorneys represent more than just Grove, but all Defendants in this action. Extension of either doctrine in this case would have the effect of allowing counsel for Mellott and the Manitowoc Defendants to preemptively screen Sentry's workers' compensation claim file where those Defendants have not asserted or demonstrated any claim of privilege over the file. Accordingly, we

_____

[10] See also Ingersoll-Rand Equip. Corp. v. Transp. Ins. Co., 963 F. Supp. 452, 454 (M.D. Pa. 1997) (Caldwell, J.) ("When an insurer retains an attorney to represent an insured, pursuant to the insurer's duty to defend, that attorney's client is the insured, not the insurer.").

find that Grove has not met its burden of showing that it shares a common legal interest or is a co-client with Sentry so as to permit its assertions of attorney-client privilege over its purported insurer's workers' compensation claim file.

Next, we reject Grove's assertions that it may assert the work product doctrine over documents in Sentry's claim file. "The work product doctrine is governed by a uniform federal standard set forth in [Federal Rule of Civil Procedure] 26(b)(3)." In re Cendant Corp. Sec. Litig., 343 F.3d 658, 661 (3d Cir. 2003). Rule 26(b)(3) provides that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)," unless otherwise discoverable or the party shows substantial need for the material. Fed. R. Civ. P. 26(b)(3). The work-product doctrine "protect[s] the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation," thus "enabling attorneys to prepare cases without fear that their work product will be used against their clients." In re Chevron Corp., 633 F.3d 153, 164 (3d Cir. 2011) (quoting Westinghouse Elec. Corp. v. Republic of the Phil., 951 F.2d 1414, 1428 (3d Cir. 1991)). "The party seeking the protection has the burden of proving the doctrine applies." Mine Safety, 73 F. Supp. 3d at 569.

To determine whether a document is prepared "in anticipation of litigation," the appropriate inquiry is whether "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." Montgomery County v. MicroVote Corp., 175 F.3d 296, 305 (3d Cir. 1999) (quoting In re Grand Jury Proceedings, 604 F.2d 798, 803 (3d Cir. 1979)). Materials prepared "in the ordinary course of business" or pursuant to

regulatory requirements or for other non-litigation purposes do not constitute documents prepared in anticipation of litigation so as to be protected under the work product doctrine. Martin v. Bally's Park Place Hotel & Casino, 983 F.2d 1252, 1260 (3d Cir. 1993).

"[F]ederal courts have consistently ruled that the work product doctrine is not inapplicable merely because the material was prepared by or for a party's insurer or agents of the insurer." United Coal Cos. v. Powell Const. Co., 839 F.2d 958, 966 (3d Cir. 1988). "Counsel for an insurer may invoke work product protection in favor of documents prepared by it in anticipation of litigation even though the insurer is not a named party in an action." Id. "Federal courts are not in agreement as to whether an insurer's claim file, prepared after an accident that may generate a potential claim, can be protected from discovery under Rule 26(b)(3)." Basinger v. Glacier Carriers, Inc., 107 F.R.D. 771, 773 (M.D. Pa. 1985) (Caldwell, J.).[11] "Rule 26(b)(3) was not intended to protect all insurance claim files from discovery but, at the same time, by its very language, the Rule does protect without reference to any exception for insurance companies, materials prepared in anticipation of litigation." Id. As such, whether documents in an insurer's claim file are prepared in the ordinary course of the carrier's business of investigating claims or in anticipation of litigation is a fact-dependent inquiry. Id.; see also Natale v. Wal-Mart Stores, Inc., No. 3:15-CV-0808, 2016 WL 3467715, at *2 (M.D. Pa. June 24, 2016). In making this determination, courts consider whether documents are prepared before a decision as to coverage was made, and whether a claim was accepted or denied.[12]

---

[11] See Mary Beth Brookshire Young, The Work Product Doctrine: Functional Considerations and the Question of the Insurer's Claim File, 64 U. CHI. L. REV. 1425, 1430-32 (1997) (summarizing five approaches taken by courts).

[12] See AKH Co. v. Universal Underwriters Ins. Co., 300 F.R.D. 684, 688 (D. Kan. 2014) ("Courts have routinely applied a rebuttable presumption 'that neither attorney work product nor

Here, because the third-party subpoena to Sentry has not yet been served, we lack sufficient information as to whether any documents in Sentry's workers' compensation claim file are protected by the work product doctrine. Grove argues that "there may be work product" in Sentry's claim file that "pertains to the instant case." (Doc. 42 at 10). Plaintiff argues that Grove's assertions amount to "hypothetical speculation" and are "nothing more than conjecture." (Doc. 44 at 27). Grove responds that it should still be permitted to screen Sentry's claim file for work product and then produce any discoverable documents from the file because there would be no prejudice to Plaintiff in doing so, and because "the damage cannot be undone" if Plaintiff were allowed to receive the documents. (Doc. 42 at 11). Plaintiff retorts that, at minimum, because of the shifting information as to Sentry's insured, Sentry should be directed to provide its response to the third-party subpoena to this court, an appointed magistrate, or a discovery master for *in camera* review. (Doc. 44 at 14).

We agree with Plaintiff that because Grove bears the burden of showing that the work product doctrine applies, and because its claims of what Sentry's claim file "may contain" are speculative, (Doc. 41 ¶ 27), Grove has not satisfied its burden of asserting work product over Sentry's claim file. Despite bearing the burden of establishing the doctrine, and despite being in the best position to do so, Grove has presented no

---

attorney-client privilege protects an insurer's investigatory file on an insured's claim from discovery before a final decision is made' as to that claim." (quoting Lindley v. Life Investors Ins. Co. of Am., 267 F.R.D. 382, 399 (N.D. Okla. 2010)); Camacho v. Nationwide Mut. Ins. Co., 287 F.R.D. 688, 694 (N.D. Ga. 2012) ("Insurance claim files generally do not constitute work product in the early stages of investigation, when the insurance company is primarily concerned with deciding whether to resist the claim . . . or to reimburse the insured and forget about the claim thereafter."); Ring v. Commercial Union Ins. Co., 159 F.R.D. 653, 660 (M.D.N.C. 1995) ("[T]he general rule is that a reasonable possibility of litigation only arises after an insurance company has made a decision with respect to the claim of its insured. Therefore, and in general, only documents accumulated after the claim denial will be done in anticipation of litigation.").

support—beyond its bare assertions—for what communications its attorneys have had with Sentry in anticipation of litigation which it believes may be contained in Sentry's claim file so as to be covered by the work product doctrine. Importantly, we note that Sentry has not yet been served with Plaintiff's third-party subpoena, and will have a chance to review its claim file and to object to any particular documents or communications as protected by attorney-client privilege or work product. In contrast to the speculative arguments before us, Sentry knows what documents are in its file and can make claims of privilege over specific documents which, if needed, can be submitted to this court for *in camera* review.

In sum, the present dispute requires this court to speculate as to what types of insurance Sentry provides to Grove, Manitowoc, or both, what common legal interests, if any, Sentry has in this litigation, and what conversations, if any, Grove's attorneys may have had with Sentry in anticipation of litigation that may be contained in Sentry's workers' compensation claim file. Grove essentially claims that speculation on these questions weigh in favor of its ability to assert attorney-client privilege or work product over Sentry's claim file. We disagree. Grove bears the burden of showing standing and the application of attorney-client privilege or work product doctrine with respect to its motion to quash or obtain a protective order over Plaintiff's third-party subpoena to Sentry. Grove has failed to satisfy its burden, and we will therefore deny its motion.

IV.    *Conclusion*

Grove has failed to meet its burden of supplying sufficient evidence of its insured-insurer relationship with Sentry so as to demonstrate standing to seek a protective order or quash Plaintiff's third-party subpoena for Sentry's workers' compensation claim file. Grove has also failed to demonstrate that either attorney-client privilege or the work

24

product doctrine apply to unspecified documents in Sentry's claim file. Accordingly, we will deny Grove's motion (Doc. 41) to obtain a protective order and to quash the third-party subpoena directed to Sentry. An appropriate order will issue.

/s/ William W. Caldwell
William W. Caldwell
United States District Judge

Date: July 13, 2017