**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CRYSTAL GRIMSLEY, Individually | : | |
| And as Administratrix of the Estate | : | |
| Of Rickie L. Grimsley, Deceased, | : | 1:15-cv-1275 |
| | : | |
| Plaintiff, | : | Hon. John E. Jones III |
| | : | |
| v. | : | |
| | : | |
| THE MANITOWOC COMPANY, INC. | : | |
| MANITOWOC CRANE COMPANIES, | : | |
| LLC, MANITOWOC CRANES, LLC, | : | |
| GROVE U.S., LLC, and KYLE MELLOTT | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

### January 30, 2019

Presently pending before the Court are five Motions for Summary Judgment filed by Plaintiff Crystal Grimsley, (Doc. 106); Defendants Grove U.S., LLC, and Kyle Mellott, (Doc. 98); Defendant The Manitowoc Company, Inc., (Doc. 103); Defendant Manitowoc Cranes, LLC, (Doc. 105); and Defendant Manitowoc Crane Companies, LLC, (Doc. 110). The motions have been fully briefed and are ripe for our review.

## I.    INTRODUCTION[1]

---

[1] The facts set forth below are collected from the various Statements of Facts submitted by the parties and have not been genuinely disputed.

Beginning in 1987, Rickie L. Grimsley ("Decedent") worked at a facility in Shady Grove, Pennsylvania, that manufactured and sold hydraulic cranes. Defendant Grove U.S., LLC ("Grove") became the owner of the facility in 1998. In 2002, Defendant The Manitowoc Company, Inc. ("Manitowoc") acquired the shares of Grove Investors, Inc., which was the parent company of multiple Grove entities, including Grove U.S., LLC. Through various restructuring maneuvers, Grove U.S., LLC, became the sole remaining Grove entity by 2003, wholly owned by Manitowoc.[2]

On August 29, 2013, the Decedent and Defendant Kyle Mellott ("Mellott") were working in the Customer Acceptance Center at the Shady Grove facility. The Decedent was designated as an Assembler Specialist A, while Mellott was designated as an Assembler Specialist C. Employees in the Customer Acceptance Center inspected the cranes after they were manufactured and would periodically "stage" cranes by moving them into groups for shipment to different geographic regions. On that date, Mellott, who was not a certified crane operator, got into the

---

[2] None of the Defendants' Statements of Facts explains the relationship of Defendant Manitowoc Crane Companies, LLC ("MCC") or Defendant Manitowoc Cranes, LLC ("Manitowoc Cranes") to the other Defendants. However, in their briefing on the motions for summary judgment, the Defendants explain that Grove is a direct subsidiary of Manitowoc Cranes, which is itself an indirect subsidiary of Manitowoc. MCC is a sister company of Manitowoc Cranes and is also an indirect subsidiary of Manitowoc. Grove is neither a direct nor an indirect subsidiary of MCC. In her Answers to the Statements of Facts, Plaintiff appears to agree that Manitowoc Cranes and MCC are sister companies and both indirect subsidiaries of Manitowoc. However, Plaintiff suggests that Grove is a direct subsidiary of MCC, not Manitowoc Cranes.

cab of a hydraulic crane to stage it. During the staging, the Decedent found himself in a precarious position between the crane Mellott was driving and a stationary crane. Mellott, apparently unaware of the Decedent's position, continued to move the crane forward, pinning the Decedent between the two cranes. The Decedent died shortly thereafter.

The Occupational Health and Safety Administration ("OSHA") conducted a six-month investigation of the accident and ultimately cited and fined Grove. Since the accident, Plaintiff has received Workers' Compensation death benefits.

On June 29, 2015, Plaintiff filed her Complaint as a wrongful death and survival action, asserting five counts of negligence against each of the Defendants and one count of strict liability against the corporate Defendants based on products liability. (Doc. 1). In her Complaint, Plaintiff asserts that Grove was the Decedent's employer. The case was initially assigned to District Judge William Caldwell. The Defendants filed two Motions to Dismiss on September 8, 2015, (Docs. 8, 10), that Judge Caldwell granted on October 29, 2015. (Doc. 17). Plaintiff appealed to the Third Circuit, which reversed the dismissal and remanded the case on January 10, 2017. (Doc. 26). After discovery, Plaintiff moved to amend her Complaint to conform to the evidence. The Amended Complaint, (Doc. 56), filed on December 18, 2017, asserts that Manitowoc, not Grove, was the Decedent's employer.

On February 5, 2018, the case was assigned to this Court. We referred the matter to Chief Magistrate Judge Susan E. Schwab on March 8, 2018, for pretrial management. (Doc. 67). Judge Schwab ordered that a settlement conference be convened on June 13, 2018. One day prior to the settlement conference, Plaintiff filed an initial Motion for Summary Judgment. (Doc. 79). Briefing on Plaintiff's initial motion never commenced. Ultimately, the settlement conference was unsuccessful, and Judge Schwab entered a case management order that set October 2, 2018, as the deadline for dispositive motions. The five pending motions were filed on that date, which included an amended summary judgment motion from Plaintiff. The motions have been fully briefed. This Court convened a second settlement conference on January 15, 2019, which also was unsuccessful. Thus, we turn now to the pending motions.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a fact is "material" only if it might affect the outcome of the action under the governing law. *See Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 172 (3d Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986)).  A court should view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences therefrom, and should not evaluate credibility or weigh the evidence.  *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

Initially, the moving party bears the burden of demonstrating the absence of a genuine dispute of material fact, and upon satisfaction of that burden, the non-movant must go beyond the pleadings, pointing to particular facts that evidence a genuine dispute for trial.  *See id.* at 773 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).  In advancing their positions, the parties must support their factual assertions by citing to specific parts of the record or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  FED. R. Civ. P. 56(c)(1).

A court should not grant summary judgment when there is a disagreement about the facts or the proper inferences that a fact finder could draw from them.  *See Reedy v. Evanson*, 615 F.3d 197, 210 (3d Cir. 2010) (citing *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982)).  Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  *Layshock ex rel. Layshock v.*

*Hermitage Sch. Dist.*, 650 F.3d 205, 211 (3d Cir. 2011) (quoting *Anderson*, 477 U.S. at 247-48) (internal quotation marks omitted).

## III.   DISCUSSION

This case is based on negligence arising from an accident that was admittedly within the scope of the Pennsylvania Workers' Compensation Act ("PWCA"), 77 P.S. §§ 1, *et seq*.[3]  Under Section 481 of the PWCA, workers' compensation is the exclusive remedy for injured employees against their employer.  77 P.S. § 481(a).  In other words, employers are immune from suit by an injured employee where workers' compensation is in play.  *See Peck v. Delaware County Board of Prison Inspectors*, 814 A.2d 185, 193-94 (Pa. 2002).  The central threshold question, therefore, is which of the Defendants was the Decedent's employer.

### A.     Identification of the Decedent's Employer

Plaintiff argues that Manitowoc has already admitted to being the Decedent's employer and has accepted liability.  Plaintiff's argument is premised on the interplay of certain provisions in the PWCA.  The PWCA provides that "[t]he first installment of compensation shall be paid not later than the twenty-first day after the employer has notice or knowledge of the employee's disability."  77

---

[3] Plaintiff concedes that the crane at issue was not defectively designed and, therefore, has abandoned her products liability claim.  (See Doc. 124 at 2, n.1).  Thus, her only remaining claims allege negligence.

P.S. § 717.1(a).  However, "[i]n any instance where an employer is uncertain whether a claim is compensable under this act or is uncertain of the extent of its liability under this act, the employer may initiate compensation payments without prejudice and without admitting liability pursuant to a notice of temporary compensation payable as prescribed by the department."  *Id.* at § 717.1(d)(1).  This temporary payment provision entitles the claimant to a maximum of ninety days of compensation.  *Id.* at § 717.1(d)(2)(ii).  During that period of, at most, ninety days, the employer has an obligation to investigate the claim and determine if it will continue making payments.  If an employer wishes to stop these temporary payments, the employer must issue the employee a notice that the payments will be stopped and that the employer does not admit liability.  *Id.* at § 717.1(d)(5).  In the absence of such a notice stopping payments, and after the expiration of the ninety-day window, the employer "shall be deemed to have admitted liability and the notice of temporary compensation payable shall be converted to a notice of compensation payable."  *Id.* at § 717.1(d)(6).

After the accident in the present matter, the workers' compensation insurer, Sentry Insurance, submitted to the Bureau of Workers' Compensation (the "Bureau") a First Report of Injury that identified the employer as "Grove Cranes Worldwide" with the federal employer identification number ("FEIN") for Manitowoc.  (Doc. 114, Ex. B).  The subsequent Notice of Temporary

Compensation Payable also listed the Decedent's employer as "Grove Cranes Worldwide" without including an FEIN. (*Id.* at Ex. D). Similarly, on a Statement of Wages submitted by Sentry, the Decedent's employer is listed as "Groves Cranes Worldwide," (*Id.* at Ex. E), and on Sentry's Subsequent Report of Injury, the insurer merely used Manitowoc's FEIN to identify the Decedent's employer. (*Id.* at Ex. F). No one filed a notice of denial or notice of stopping temporary compensation payable before the expiration of the ninety-day window. Plaintiff, therefore, argues that based on these documents, and under Section 717.1(d)(6), Manitowoc has admitted liability and, by extension, has admitted to being the Decedent's employer.

A plain reading of Section 717.1, however, reveals that the section does not establish an employer's identity where it is a disputed issue. In fact, the PWCA does not provide significant guidance on proper identification of the employer in the first place, prompting courts to turn to the common law. *See, e.g., Kiehl v. Action Mfg. Co.*, 535 A.2d 571, 573 (Pa. 1987) (quoting *Harris v. Seiavitch*, 9 A.2d 375, 376 (Pa. 1939)). Rather, Section 717.1 clearly addresses timeliness of payment and investigations by requiring employers and insurers to "promptly investigate each injury reported or known to the employer" and to "proceed promptly to commence the payment of compensation." 77 P.S. § 717.1(a). The provisions discussed above press employers and insurers not only to begin

payments while investigating the claims, but to complete their investigation in a timely manner under threat of being deemed to have admitted liability. In this case employer *liability* is not contested; no one disputes that this was a legitimate claim under the PWCA. Thus, the fact that no entity filed a notice of denial or a notice stopping temporary compensation payable is not, itself, instructive. We see no basis, however, for finding that Section 717.1 also can be invoked to resolve a dispute as to the *identity* of the employer.

The documents filed by Sentry with the Bureau demonstrate some apparent confusion on Sentry's part. In all but one instance, the Decedent's employer was identified as Grove Cranes Worldwide, but Sentry used Manitowoc's FEIN. Plaintiff fails to cite any part of the record suggesting that Manitowoc and Grove Cranes Worldwide are the same entity. Furthermore, during the early stages of this litigation, Sentry issued an Amended/Corrected Notice of Temporary Compensation Payable that amended the Decedent's employer to Grove U.S. LLC and changed the FEIN. (Doc. 125, Ex. F). Although Plaintiff suggests that something nefarious is afoot with the timing of the correction, it is worth noting that, prior to the instant litigation, Sentry wrote to Plaintiff's former counsel and identified the Decedent's employer as Grove U.S. LLC. Thus, absent any evidence that Manitowoc and Grove Cranes Worldwide are the same entity, we are not compelled to find that Section 717.1 is dispositive here.

In the alternative, Plaintiff argues that Manitowoc should be judicially

estopped from denying that it transacts business as Grove Cranes Worldwide and

was the Decedent's employer. Judicial estoppel is a court-made doctrine that

"absent any good explanation, a party should not be allowed to gain an advantage

by litigation on one theory, and then seek an inconsistent advantage by pursuing an

incompatible theory." *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General

Motors Corp.*, 337 F.3d 314, 319 (3d Cir. 2003) (quoting *Scarano v. Central R.

Co. of N.J.*, 203 F.2d 510, 513 (3d Cir. 1953)). The doctrine "should only be

applied to avoid a miscarriage of justice" and is "not intended to eliminate all

inconsistencies no matter how slight or inadvertent they may be." *Id.* (citing

*Montrose Medical Group Participating Savings Plan v. Bulger*, 243 F.3d 773 (3d

Cir. 2001); *In re Chambers Development Co., Inc.*, 148 F.3d 214 (3d Cir. 1998)).

The Third Circuit, therefore, has set forth a three-part test for applying the

doctrine:

> First, the party to be estopped must have taken two positions that are
> *irreconcilably inconsistent*. Second, judicial estoppel is unwarranted
> unless the party *changed his or her position* "*in bad faith* – i.e., with
> intent to play fast and loose with the court." Finally, a district court
> may not employ judicial estoppel unless it is "tailored to address the
> harm identified" and *no lesser sanction would adequately remedy the
> damage* done by the litigant's misconduct.

*Id.* (quoting *Montrose*, 243 F.3d at 779-90) (emphases in the original).

Plaintiff argues that the filings Sentry made to the Bureau demonstrate that Manitowoc admitted to being the Decedent's employer. As already discussed, however, we find that argument unpersuasive. Plaintiff has presented no evidence that Manitowoc transacted business as Grove Cranes Worldwide, and the documents submitted by Sentry are, at best, inconclusive. Plaintiff also argues that Manitowoc has previously litigated workers' compensation claims related to injured workers at the Shady Grove facility under the names of Manitowoc or Grove Cranes Worldwide. *See, e.g., The Manitowoc Company, Inc. & Sentry Insurance v. W.C.A.B. (Cowan)*, 74 A.3d 1137 (Pa. Super. Ct. 2013), *appeal denied*, 85 A.3d 485 (Pa. 2014); *Billy R. Ingram v. Grove Cranes Worldwide*, 2016 WL 4420062 (Pa. Work. Comp. App. Bd. April 29, 2016); *Darren Whitlock v. The Manitowoc Company*, 2013 WL 7028179 (Pa. Work. Comp. App. Bd. Dec. 16, 2013); *Jaime Hernandez v. Grove Cranes Worldwide*, 2011 WL 484163 (Pa. Work. Comp. App. Bd. Jan. 12, 2011). Case captions, however, do not provide persuasive evidence of any legal theories Manitowoc may have pursued in the past. None of the cases indicate that Manitowoc specifically argued that Manitowoc, and not Grove, was the employer of Shady Grove employees. Indeed, in the *Cowan* case, the Pennsylvania Superior Court even indicates that *Sentry* was the employer ("The Manitowoc Company, Inc., and Sentry Insurance (together, Employer) petition for review. . ."). The imprecise identification of the employer in these

cases (Grove Cranes Worldwide in 2011, Manitowoc in 2013, Grove Cranes Worldwide in 2016) suggests to the Court that there was no need to resolve a dispute as to the correct employer in those matters. We do not know why the captions bounce between Manitowoc and Grove Cranes Worldwide, or why the Pennsylvania Superior Court lumped Sentry with Manitowoc as a collective employer. Simply put, these cases do not offer evidence that Manitowoc has previously litigated a position that is irreconcilably inconsistent with its position in this case.

Plaintiff further contends that the Decedent's W-2s prove that Manitowoc was his employer and is "playing fast and loose with the court." In the tax years prior to the accident, the W-2s issued to employees identified the employer as "The Manitowoc Company, Inc., Agent for Grove US, LLC" and uses Manitowoc's FEIN. (Doc. 112, Ex. M). For tax year 2013, the year of the accident, the W-2s were changed to list the employer as "Grove US, LLC c/o The Manitowoc Company, Inc." with Grove's FEIN. (*Id.* at Ex. N). Mark Klaiber, the corporate designee, testified at his deposition that, for the tax years prior to 2013, Manitowoc used a particular third-party payroll processor and was "a common filing agent for payroll for all of the subsidiaries. What that means is that – that the company had decided that the payroll would all be under The Manitowoc Company, Inc. as an agent for each of the respective subsidiaries." (Doc. 112, Ex. C at 23:18-23).

Klaiber further explained that "[t]he workers were employees of that subsidiary, but again, with a common filing agent of The Manitowoc Company, Inc." (*Id.* at 24:5-8). Beginning with tax year 2013, Manitowoc changed its payroll vendor, and the new vendor "had advised Manitowoc and Manitowoc made the decision then to change the way the payroll was processed. Instead of a common filing agent, being the ultimate parent, The Manitowoc Company, Inc., starting in 2013 the employer was listed as the – the actual subsidiary itself." (*Id.* at 24:13-18). Plaintiff points to no evidence contradicting this testimony. Instead, Plaintiff cites to an earlier decision in this matter authored by Judge Caldwell in which the timing of the W-2 change was called into question. (Doc. 46). Judge Caldwell's decision, however, came almost a full year before Klaiber's deposition was taken and was issued in the context of a motion for protective order and to quash subpoena. Thus, while we undoubtedly respect Judge Caldwell's analysis on the issue, he had far less information available to him than we do now. Plaintiff cannot rely on that decision to manufacture a contradiction.

Nothing in the record demonstrates that Manitowoc represented itself as the employer instead of Grove. Plaintiff, therefore, attempts to suggest that Manitowoc *misrepresented* Grove as the employer. To accomplish this, she relies on the affidavit of Brian Smith, human resources director, that was attached to Grove's Motion to Dismiss. (Doc. 8, Ex. 2). In the affidavit, Smith states that the

Decedent and Mellott were both employees of Grove and states that he is the director of human resources at Grove. (*Id.*). Plaintiff notes, however, that Smith's personal LinkedIn profile lists his title as director of human resources at Manitowoc. (Doc. 114 at 21). Additionally, Smith's employee badge shows Manitowoc's logo. (*Id.* at 22). Plaintiff argues that Smith falsely represented himself as the human resources director for Grove in his affidavit. She suggests the facts here are parallel to those in *Bailey v. B.S. Quarries, Inc.*, 2016 WL 1271381 (M.D. Pa. Mar. 31, 2016), where the court found that estoppel was warranted.

In *Bailey*, an employee was killed while working in a quarry when he accidentally fell into a rock crusher. *Bailey*, 2016 WL 1271381 at *1. B.S. Quarries owned and operated the quarry itself, while Damascus 535 owned and operated the portable crushing plant at the quarry. *Id.* The sole owner of Damascus 535 was also a co-owner of B.S. Quarries. *Id.* The owner at issue attested in an affidavit that B.S. Quarries was the employer, which prompted the dismissal of an earlier lawsuit on grounds of workers' compensation immunity. *Id.* at *5. In a subsequent lawsuit, however, the same owner asserted that Damascus 535 was the employer and was entitled to workers' compensation immunity. *Id.* at *4. Based on the evidence, the Court concluded that estoppel was warranted because "Plaintiff has already been prejudiced once when defendants misled her to

withdraw a valid lawsuit, and she will suffer prejudice again if defendants are permitted to manipulate the shield of immunity to shelter whichever of their entities is at greatest risk." *Id.* at *7.

Contrary to Plaintiff's suggestion, the facts obviously are not parallel. Smith's affidavit clearly states that Grove was the Decedent's employer, which is the same position that Grove and Manitowoc currently take. Smith's statement that he is the human resources director for Grove when his personal LinkedIn profile and employee badge shows Manitowoc is not the kind of misrepresentation contemplated in *Bailey*, if it is even a misrepresentation at all. In a colloquial sense, of course, everyone within the Manitowoc universe "works" for Manitowoc, as the ultimate parent company. But that is not the same as the statutory employer for workers' compensation purposes. Smith's affidavit clearly and unequivocally states that Grove was the Decedent's employer. Thus, we see no misrepresentation or irreconcilably inconsistent position. Estoppel in this case is not warranted.

Having found Plaintiff's arguments unavailing, we must continue our quest to determine the proper employer in the context of workers' compensation. The PWCA does not specifically define "employer." Pennsylvania courts "have held that 'the rules for determining the existence of the relation of employer and employee . . . are the same as those at common law for ascertaining the relation of master and servant.'" *Kiehl v. Action Mfg. Co.*, 535 A.2d 571, 573 (Pa. 1987)

(quoting *Harris v. Seiavitch*, 9 A.2d 375, 376 (Pa. 1939)). "The classic common law test of the employer/employee relationship is that an entity is an employer where it maintains control or the right to control the work to be done and the manner of doing it." *Id.* (citing *Venezia v. Philadelphia Electric Co.*, 177 A. 25 (1935)). In the present matter, determining control is not such an easy task in light of the parent-subsidiary relationship that spans multiple levels of corporate hierarchy. The Pennsylvania Supreme Court, addressing this very problem, determined that "the question of control can properly be resolved only by a consideration of the functions performed by every interested party – each corporation and the injured employee – in addition to other indicia of control." *Grimsley v. Manitowoc Company, Inc.*, 675 F.App'x 118, 120 (2017) (quoting *Mohan v. Publicker Indus., Inc.*, 222 A.2d 876, 879 (Pa. 1966)). The Third Circuit, in considering the present case on appeal, interpreted *Mohan* as "requiring two steps: First, we apply a 'functional' analysis. Second, if that analysis is inconclusive, we turn to other indicia of control." *Id.* (citing *Joyce v. Super Fresh Food Mkts., Inc.*, 815 F.2d 943, 946-47 (3d Cir. 1987)). Therefore, we begin with a functional analysis.

The functional analysis "focus[es] on the functions performed by each corporation and by the employee." *Mohan*, 222 A.2d at 879. "If the corporate functions are distinct and in the performance of his duties, the employee is shown

to have acted in furtherance of the functions of only one, or essentially one of the corporations, then that corporation will be deemed his employer." *Id.*

Defendants are united in their assertion that the functional analysis points to Grove as the Decedent's employer. In support of their argument, they rely almost entirely on the deposition testimony of Klaiber, the corporate designee. Klaiber testified that Grove owned the Shady Grove property. (Doc. 100, Ex. C at 11:14-12:8; *see also* Doc. 100, Ex. E). Klaiber further stated that Manitowoc "itself does not manufacture or produce anything. Probably best to think of it as – as a holding company that is a – an umbrella organization for the ownership." (Doc. 100, Ex. C at 15:24-16:3). He explained that "initial design through final production, testing and sale, all of those types of activities and operations were part of Grove U.S. LLC." (*Id.* at 19:25-20:3). Klaiber further testified:

> Following the acquisitions of entities like . . . Grove and a number of others, part of the integration of those companies into the Manitowoc family was to – for the parent to take over a number of the administrative functions of those independent subsidiaries. Obviously there are synergies that can be obtained by consolidating a number of functions at a corporate level. For instance, tax and accounting and payroll, all of those can be done at a parent company level with input and assistance from the subsidiaries.

(*Id.* at 21:15-22:2). In response to Defendants' arguments, Plaintiff initially suggests that Manitowoc was, indeed, involved in the design, manufacture, and sale of the cranes at the Shady Grove facility and points to the fact that Manitowoc's logo appeared on pertinent documentation, that Manitowoc owned

the copyright for the operator's manual, and that Manitowoc printed an employee calendar that showed Grove cranes and Shady Grove employees. (Doc. 122 at 9-10). Those functions, whether marketing or copyright ownership, are the type of administrative functions one would expect of a parent company and do not indicate that Manitowoc designed, manufactured, or sold the cranes at issue here. Klaiber, in fact, testified that "Grove U.S. LLC still had its own bank account . . . because the mobile hydraulic crane product that we've talked about was manufactured and sold by Grove. So Grove U.S. LLC would have been the selling entity, and therefore any dealers, distributors, or customers that purchased Grove product would have paid Grove U.S. LLC through the bank accounts that Grove U.S. continued to maintain." (Doc. 100, Ex. C at 62:3-13). Plaintiff has failed to produce any evidence to the contrary.

Plaintiff continues this line of argument with respect to documents governing workplace procedures. In particular, Plaintiff cites to Manufacturing Work Instructions related to staging cranes, which bears the Manitowoc logo. (Doc. 122, Ex. 2). In the deposition of Charles Carbaugh, III, the environmental health and safety manager for the Shady Grove facility, the work instructions document was discussed in the context of job safety analyses that were developed. (Doc. 120, Ex. C at 49:6-19). In an affidavit, however, Carbaugh attests that the job safety analyses for the Shady Grove facility are "independently developed,

prepared, implemented and enforced by Grove U.S., LLC." (Doc. 112, Ex. Z at ¶

6). Thus, the record indicates that the presence of a Manitowoc logo on Shady

Grove workplace documents is not evidence that Manitowoc drafted those

documents or that the function of Manitowoc was to design, manufacture, or sell

the cranes at the Shady Grove location. The record is replete with evidence that

Manitowoc's function was to serve as a hub of central administration and serve as

an overall brand for its subsidiaries. Likewise, the record amply demonstrates that

Grove was directly in the business of designing, manufacturing, and selling mobile

hydraulic cranes. Plaintiff has not contradicted any of this evidence but, instead,

has conducted what amounts to a "word search" for Manitowoc's name or logo in

documentation and speculates, without support, that branding is evidence of

designing, manufacturing, or selling cranes. There is no doubt that the Decedent's

work served the design, manufacture, and sale of cranes at the Shady Grove facility

and, thus, the functional analysis is clear that the Decedent was working to benefit

the function of Grove. Therefore, we find that Grove was the Decedent's employer

for workers' compensation purposes. Because the functional analysis is

conclusive, we need not consider other indicia of control.

As stated earlier, Grove, as the Decedent's employer, has immunity to suit;

workers' compensation is the exclusive remedy available. The PWCA also

provides immunity to any co-workers whose negligence caused the injury. 77 P.S.

§ 72 ("If disability or death is compensable under this act, a person shall not be liable to anyone at common law or otherwise on account of such disability or death for any act or omission occurring while such person was in the same employ as the person disabled or killed, except for intentional wrong.").  In this case, there is no dispute that Mellott was an employee of Grove.  Further, Plaintiff does not suggest that Mellott intentionally killed the Decedent but was merely negligent.  Thus, Mellott, as a co-employee of the Decedent, is also immune from suit under the PWCA.  For these reasons, Plaintiff can have no claim against Grove or Mellott by law and we will grant their Motion for Summary Judgment.  (Doc. 98).[4]

What remains is Plaintiff's claims of negligence against Manitowoc, Manitowoc Cranes, and MCC.  We turn to those claims now.

### B.    Negligence

---

[4] In its reply brief, Manitowoc argues for the first time that it actually *can* be the Decedent's employer, *in addition* to Grove, and therefore equally immune from suit.  Manitowoc makes this argument despite vigorously opposing a finding that it was the Decedent's employer in its opening brief.  Although this novel argument was made in reply and, therefore, not fully briefed by both sides, we nevertheless find it unpersuasive.  Manitowoc relies on *Nagle v. TrueBlue, Inc.*, 148 A.3d 946 (Pa. Commonw. Ct. 2016) for support.  In *Nagle*, however, the issue was not a parent-subsidiary relationship but a temporary labor agency and one of its customers.  The Commonwealth Court considered the legal employment relationship between the deceased employee and the employment agency that hired him, as well as the transfer of control to the township where the employee was assigned to work.  The Court found that the PAWC permits more than one employer and, under those facts, both the agency and the township were entitled to immunity, with the agency being the *legal* employer and the township being the *actual* employer.  Manitowoc suggests that it is the legal employer while Grove is the actual employer.  That argument, however, likely could apply to *every* parent-subsidiary fact pattern, thereby rendering the functional analysis meaningless.  We see no reason to extend the finding of *Nagle* to the facts presented here.

In Pennsylvania, "employees of a wholly-owned subsidiary may bring a lawsuit against the parent company for its independent acts of negligence." *McNeal v. ArcelorMittal USA, Inc.*, 143 F.Supp.3d 241, 248 (E.D. Pa. 2015) (citing *Kiehl v. Action Manufacturing Co.*, 535 A.2d 571 (Pa. 1987)). "A parent company may owe a duty to the employees of a subsidiary under the theory articulated in *Kiehl*: that they maintain such control over the employee that they are effectively the employer, and thus owe them a common law duty to maintain a safe work environment." *Id.* (citing *Kiehl*, 535 A.2d at 571). "Whether a duty exists in any given set of circumstances is a question of law." *K.H. ex rel. H.S. v. Kumar*, 122 A.3d 1080, 1094 (Pa. Super. Ct. 2015) (quoting *Winschel v. Jain*, 925 A.2d 782, 796 (Pa. Super. Ct. 2007)).

First, we note that Plaintiff's arguments in support of her negligence claims relate *only* to Manitowoc, and not Manitowoc Cranes or MCC. Plaintiff presents no evidence to support the theory that Manitowoc Cranes or MCC, as separate entities from Manitowoc, engaged in independent acts of negligence. Thus, we will grant summary judgment to Manitowoc Cranes and MCC.

Regarding Manitowoc, Plaintiff's arguments that Manitowoc exercised control over the Decedent sound a familiar tune. Plaintiff returns to her arguments that Manitowoc branded the cranes and supporting documentation with its name and logo, and that the safety instructions bear Manitowoc's logo. As discussed

above, though, branding is not evidence of control, and the safety instructions were drafted and implemented by Grove employees.[5]

Plaintiff also briefly puts forth the expert opinion of Paul Dreyer, P.E., as supporting evidence. Dreyer opines that Manitowoc failed to comply with standards set forth by the American Society of Mechanical Engineers ("ASME") related to mobile crane and lifting devices. ASME B30. In doing so, Dreyer posits that Manitowoc filled certain roles upon which the ASME standards impose duties. Specifically, Dreyer identifies Manitowoc as the "crane owner," "crane user," and "site supervisor." (Doc. 129, Ex. 42 at 19). The ASME standards define these terms as follows:

> (a) Crane Owner. The crane owner has custodial control of a crane by virtue of lease or ownership.
>
> (b) Crane User. The crane user arranges the crane's presence on a worksite and controls its use there.
>
> (c) Site Supervisor. The site supervisor exercises supervisory control over the work site on which a crane is being used and over the work that is being performed on that site.

---

[5] Plaintiff's arguments are more in line with an attempt to pursue an alter ego theory and pierce the corporate veil. However, Plaintiff maintains that she is not pursuing such a theory, and the Third Circuit, in its decision reversing the prior order of dismissal, estopped her from advancing an alter ego argument. *Grimsley v. Manitowoc Company, Inc.*, 675 F.App'x 118, 122 (3d Cir. 2017) ("[P]laintiff is the master of her Complaint, and has repeatedly insisted – in the District Court and here – that she will not pursue an alter-ego theory. Based on those representations, plaintiff should simply be estopped from making a veil-piercing argument in any further proceeding.").

ASME B30.5-3.1.3. Dreyer indicates that Manitowoc was the crane owner because "the crane was a Manitowoc product based on the Operator's Manual and it had not yet been sold." (Doc. 129, Ex. 42 at 19). In reviewing the operator's manual, Dreyer performed the kind of "word search" analysis employed by Plaintiff: highlighting the number of instances where Manitowoc's name or logo appeared. As noted earlier, however, we have already rejected the argument that uniformity of branding is evidence of control. We also reiterate the testimony of Klaiber, the corporate designee, who stated that Grove maintained an independent bank account because it directly sold and received payment for the cranes it manufactured. Klaiber's unrebutted testimony indicates that Grove, and not Manitowoc, were the owners of the cranes at issue.

Further, Dreyer supports his claim that Manitowoc was both the crane user and the site supervisor because "Manitowoc controlled the work that was being performed at the time of the incident" based on the work instructions in place for the facility. As already discussed, though, the record shows that the worksite safety instructions were developed and implemented by Grove employees, despite the appearance of Manitowoc's name and logo on them. In short, Dreyer bases his opinion on the same faulty legal conclusions as Plaintiff and cannot be used as *proof* of those conclusions. Plaintiff has failed to present evidence that Manitowoc – the entity – exercised a level of control over Grove that goes beyond the normal

parent-subsidiary control and effectively constitutes Manitowoc as the Decedent's employer. In the absence of such evidence, we cannot find that Manitowoc owed a duty to provide a safe work environment to the Decedent. Accordingly, we also will grant Manitowoc summary judgment.

## IV.   CONCLUSION

In accordance with the foregoing analysis, we find that Grove was the Decedent's employer under the PWCA and Mellott was his co-employee. We further find that Plaintiff has failed to produce evidence that Manitowoc, MCC, or Manitowoc Cranes owed a duty of care to the Decedent. Therefore, we shall deny Plaintiff's Motion for Summary Judgment and grant the Motions of Grove and Mellott, Manitowoc, Manitowoc Cranes, and MCC. We will issue an order consistent with this memorandum separately.